## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) MELINDA FARROW, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: CIV-23-503-SLP |
| v. | ) | |
| | ) | |
| (1) CITY OF WEATHERFORD; | ) | ATTORNEY LIEN CLAIMED |
| (2) LOUIS FLOWERS, | ) | |
| (3) JOSH VANDEBURGH, and | ) | |
| (4) LAURA COX, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Melinda Farrow, ("Plaintiff") through her attorneys of record, Daniel E. Smolen, of SMOLEN & ROYTMAN, PLLC, and brings this action against the Defendants, City of Weatherford, Oklahoma, Luis Flowers (in his individual capacity), Josh VanDeburgh (in his individual capacity), and Laurie Cox (in her individual capacity), (collectively "Defendants") for violations of her constitutionally protected rights arising out of her employment and interference with employment by said Defendants.

## PARTIES & JURISDICTION

1.     This is an action for damages and to secure protection of and to redress deprivation of rights secured by Title VII of the Civil Rights act of 1964, as amended 42 U.S.C §2000e et seq. ("Title VII"), providing for relief from a hostile work

environment on the basis of gender and sex, as well as 42 U.S.C. § 1983 providing for relief against the deprivation of rights and privileges secured to Plaintiffs by the Constitution for violations by the Defendants while acting under the color of law.

2. Plaintiff Melinda Farrow, a resident of Washita County, Oklahoma, filed a charge of discrimination against the Defendant City of Weatherford and Weatherford Police Department with the Equal Employment Opportunity Commission ("EEOC") complaining of sexual harassment, a hostile work environment, retaliation and discrimination based on her sexual orientation. A Notice of Right to Sue was received by Plaintiff on or about March 8, 2023, and this Complaint has been filed within ninety days (90) of the receipt of the Notice of Right to Sue. As such, Plaintiff Melinda Farrow has complied fully with all prerequisites in this Court under Title VII.

3. Jurisdiction of the Court is proper under § 706(f)(3) of Title VII, 42 U.S.C. §2000e- 5(f)(3). In addition, jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343 (Civil Rights), and 28 U.S.C. § 1337 (Acts of Congress regulating commerce).

4. Defendant City of Weatherford ("City") is an Oklahoma municipality conducting regular activity in the State of Oklahoma. Defendant City of Weatherford regularly employs more than fifteen (15) people. Defendant City of Weatherford is, and was at all times pertinent hereto, responsible, in part, for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, and/or

customs of Weatherford Police Department, including the policies, practices, procedures, and/or customs that violated Plaintiffs' rights as set forth in this Complaint.

5.      Defendant Luis Flowers is a citizen of the United States and a resident of the State of Oklahoma. Defendant Flowers was, at all pertinent times, the Chief of Police for the City of Weatherford and acting under color of State law. Chief Flowers was, at all times pertinent hereto, responsible, in part, for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, and/or customs of Weatherford Police Department, including the policies, practices, procedures, and/or customs that violated Plaintiffs' rights as set forth in this Complaint.  Chief Flowers was directly involved in the oversight, training, supervision, discipline, and/or termination of employees, agents, and/or officers of the Weatherford Police Department. Defendant VanDeburgh's acts, or omissions to act, gave rise to claims herein.

6.      Defendant Laurie Cox is citizen of the United States and a resident of the State of Oklahoma. Defendant Cox was, at all pertinent times, an employee of the City of Weatherford / Weatherford Police Department, whose acts, or omissions to act, gave rise to claims herein.

7.      Defendant Josh VanDeburgh is a citizen of the United States and a resident of the State of Oklahoma. Defendant VanDeburgh was, at all pertinent times, employed as the Assistant Chief of Police for the City of Weatherford and acting under

color of State law. Assistant Chief VanDeburgh was, at all times pertinent hereto, responsible, in part, for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, and/or customs of Weatherford Police Department, including the policies, practices, procedures, and/or customs that violated Plaintiffs' rights as set forth in this Complaint. Assistant Chief VanDeburgh was directly involved in the oversight, training, supervision, discipline, and/or termination of employees, agents, and/or officers of the Weatherford Police Department. Defendant VanDeburgh's acts, or omissions to act, gave rise to claims herein.

8.      Compensatory damages are sought pursuant to 42 U.S.C. § 2000e-5(g).

9.      Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 2000e 5(g).

10.     Compensatory and punitive damages are sought pursuant to 42 U.S.C. § 1983.

11.     Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 1988.

**VENUE**

12.     This action lies properly in the Western District of Oklahoma pursuant to 28 U.S.C §139l(b), as the unlawful employment practices complained of herein occurred within the Western District of Oklahoma and because Defendant is a governmental entity conducting regular activity in the Western District of Oklahoma.

**FACTS COMMON TO ALL CLAIMS**

13. Plaintiff incorporates all preceding paragraphs as if realleged here.

14. Plaintiff Melinda Farrow was born a female, is currently transitioning to a male, and is a member of the LGBTQ community.

15. Plaintiff was hired by Weatherford Police Department on August 15, 2011, as a Communications Officer and held this position for the requisite 2 years prior to applying for the Patrol Division. Plaintiff Farrow was then hired as a patrol officer on October 3, 2013, but was injured during CLEET training in January of 2014. Plaintiff Farrow returned to dispatch at that time.

16. Plaintiff Farrow was named Non-Commissioned Officer of the Year in 2012 for her work dedication and ethics in the Communication Division.

17. In February 2015, Plaintiff Farrow applied to and was promoted to the rank of Sergeant. In July 2017, Plaintiff Farrow was promoted to the rank of Lieutenant, when the previous Lieutenant, Connie Cox, resigned due to issues she had with Chief Flowers and Assistant Chief VanDeburgh. The first 2 years in this position went very well. Plaintiff Farrow's team came together and became the best 911 call center in Western Oklahoma.

18. In January 2019, Plaintiff Farrow started having issues with Communications Sergeant Jennifer Wingard. Plaintiff Farrow had just become engaged to her girlfriend at the time and some of her coworkers asked about the proposal. After this **Sgt. Wingard had made several remarks not approving**

**of Plaintiff Farrow's homosexual "lifestyle"**.

19.     Plaintiff Farrow complained to her supervisor, Assistant Chief VanDeburgh about Wingard's comments. **Assistant Chief VanDeburgh ignored Plaintiff Farrow's complaint and, instead, ordered her to not have visitors because it made people feel uncomfortable**. Assistant Chief VanDeburgh also ordered Plaintiff Farrow not to be friends with any coworkers. Plaintiff had been friends with most of her co-workers prior to being promoted to Sergeant. Plaintiff then complained to Chief Flowers about Wingard's comments, Wingard's refusal to follow Plaintiff Farrow's directions, and Assistant Chief VanDeburgh's inappropriate response to her complaint. Chief Flowers took no action.

20.     However, Lieutenant Laura Cox, a heterosexual woman, was not disciplined nor ordered to refrain from inviting co-workers and subordinates to parties at her house. The parties were notorious for poor behavior. One party ended in two patrolmen exchanging punches to the face. Yet, only Plaintiff Farrow was isolated from being friends with co-workers.

21.     Wingard's discriminatory and derogatory comments to Plaintiff Farrow continued and got more severe. Wingard, Alicia DePesa, and Eric Dominguez fabricated that Plaintiff Farrow had "hit on" DePesa. This began an internal investigation against Plaintiff Farrow. Plaintiff Farrow was not informed of the fabrication nor of the investigation until around the end of April 2019 or beginning of May 2019, when she was called to Chief Flowers's office.

22.     Despite Farrow informing Chief Flowers that the allegations against her were false, Chief Flowers gave Plaintiff Farrow a write up for sexual harassment and having too close of a relationship with her co-workers. Chief Flowers forced Plaintiff Farrow to sign the write up, telling her things would be much more difficult if she did not. Chief Flowers told Plaintiff Farrow if she could make it a whole year without being friends with her coworkers, he would not forward the write-up to HR and would make the write up disappear.

23.     Alicia DePesa contacted Plaintiff Farrow a few weeks later. A meeting was held with DePesa, Chief Flowers, and Plaintiff Farrow. DePesa stated she was convinced by Wingard and Eric Dominguez to make up a lie that Plaintiff Farrow had "hit on" her and that she had falsely accused Plaintiff Farrow. Chief Flowers removed the write-up but the policy against Plaintiff Farrow being friends with her co-workers remained.

24.     Around August 2019, a new hire, Abigail Stephenson, came to Plaintiff Farrow about rumors she heard about Sergeant Jennifer Wingard targeting staff due to their sexual orientation. Plaintiff Farrow informed Stephenson if she felt she was being targeted to let Plaintiff Farrow know and Plaintiff Farrow would handle it appropriately. Instead, Stephenson resigned due to fear of being targeted during her training with Sergeant Wingard.

25.     In January 2020, Plaintiff Farrow asked Chief Flowers for a raise in pay since promotion to Lieutenant came with many additional duties and, **despite her**

**experience and recognized excellence in performance of her duties, Plaintiff Farrow was paid $4-$5 dollars less per hour than the other, heterosexual, Lieutenants.** Plaintiff Farrow had more responsibilities and liabilities in her position, including 911, Dispatch, and Jail Administrator. Chief Flowers said that the Mayor would not allow him to give Plaintiff Farrow a raise.

26.     In January 2021, Plaintiff Farrow, while working in her office, overheard Assistant Chief VanDeburgh tell Chief Flowers he did not trust her because she had gone to Chief Flowers about policy concerns she had while Assistant Chief VanDeburgh was absent from the office, despite the fact that Plaintiff Farrow had tried to reach out to the Assistant Chief several times via phone call and texts but never heard back.

27.     August 17, 2021, Plaintiff Farrow was working in Dispatch due to being short staffed. Plaintiff Farrow was training trainee Timothy Cabal and overseeing training on new hire Jana Harris while working alongside seasoned employee Nikki Valencia. Nikki left Dispatch to conduct her hourly jail check which left Plaintiff Farrow alone to observe two trainees. As soon as Valencia walked out, the radio went off and it was Sergeant Casey Clark going on traffic the same time as Patrolman Sean Lanier, which caused a bleed over on the radio and confusion for the trainees.

28.     Plaintiff Farrow had been sitting near Timothy and got up to help him sort the confusion out, run his tag numbers and enter the calls for service into the computer. When Farrow was standing there helping him, Lieutenant Laura Cox came

into the dispatch area and started yelling at Timothy to get the calls entered. Lieutenant Farrow told her she was not helping by yelling. Lieutenant Cox, in an attempt to intimidate, threaten, and/or provoke Plaintiff Farrow, replied "you want to step out here and tell me that to my face." Lieutenant Cox left to her office but was yelling the entire way for everyone to hear. Plaintiff Farrow tried to speak to Assistant Chief VanDeburgh about the episode, but he was unavailable. Plaintiff Farrow spoke to Lieutenant Matt Bartel.

29.   On August 19th, Lieutenant Laura Cox, Assistant Chief Joshua VanDeburgh and Plaintiff Farrow met in the Assistant Chief's office to speak about the episode that occurred. Plaintiff Farrow felt threatened that Lieutenant Laura Cox and Assistant Chief Joshua VanDeburgh sat together facing Plaintiff Farrow. Lieutenant Cox apologized for screaming at Farrow but continued to criticize Farrow and voice her opinion that Farrow did not train correctly and shouldn't have been observing Timothy the way she was in that phase of training. Farrow told her that training in Communications was completely different than other training in the department and that Cox did not have knowledge of, or experience in, how things are done in Communications. Lieutenant Cox and Assistant Chief VanDeburgh both insisted Plaintiff Farrow's position was highly important and alleged that her employees did not respect her. Additionally, **Lieutenant Cox and Assistant Chief VanDeburgh stated that Plaintiff Farrow should not have visitors because her sexual orientation made employees feel uncomfortable**.

30.     Plaintiff Farrow was forced into the indignity of justifying a privilege of all employees where she works 6 days or more out of each week and long hours. Plaintiff Farrow stated she does not show any display of affection to her girlfriend while she visits. Plaintiff Farrow told them she felt singled out and discriminated against because everyone else could have visitors. Lieutenant Cox and Assistant Chief VanDeburgh kept saying that Plaintiff Farrow' job position was important, as though it justified the disparate treatment of Plaintiff.

31.     On prior occasions, when Plaintiff Farrow had a visitor, Lieutenant Cox would go directly to the dispatch visitor log located in Dispatch to find the name of her visitor and then search them on her phone via Facebook. On one of these occasions, when Plaintiff Farrow had a visitor, Farrow caught Lt. Cox doing this on camera.

32.     **Lieutenant Cox and Assistant Chief VanDeburgh also advised Plaintiff Farrow that she needed to refrain from posting "homosexual material" on social media.** Plaintiff Farrow confirmed they had been viewing her pages. Plaintiff Farrow felt singled out because **no other employee was restricted in their social media postings and videos**.

33.     On October 12, 2021 Plaintiff Farrow started hormone therapy to begin her transition to a male and informed Chief Flowers the next day.

34.     However, on October 19, 2021, during Communications monthly meeting, **Assistant Chief VanDeburgh announced that Lt. Farrow would no longer be managing the day-by-day operations in Communications due to**

purported **"issues with her hormones changing."** Assistant Chief VanDeburgh stated that he would be taking over these duties and shared his opinion that Farrow was not a leader nor a manager. Chief Flowers ratified the Assistant Chief's decision and did nothing to rescind or otherwise remedy the Assistant Chief's conduct. Plaintiff Farrow had several of her staff speak to her, text, and call. They all did not understand why Chief Flowers and Assistant Chief VanDeburgh stripped her of her duties.

35.    On November 2, 2021, Lieutenant Cox came into the dispatch area and advised Plaintiff Farrow they were going to have a "ticket war" to set up Timothy to fail. Plaintiff Farrow advised her that it was a high fire day and that would impede receiving important 911 calls. Lieutenant Cox had a "digiticket" in her hand and said "get ready". Patrolman Chaz Hickman, Patrolman Sean Lanier, Patrolman Landon Whaley, Patrolman Dallas Lyles, Sergeant Casey Clark, and 2nd Lieutenant Cox went out and started running traffic as fast as they could- making call into Dispatch to run plates. Then they disabled the GPS on their vehicles and made 911 calls, obstructing serious 911 calls. At shift change, Sgt Clark and Patrolman Hickman came through Dispatch and asked if they were having fun.

36.    Many of the officers didn't like Timothy because they thought he was homosexual. Timothy is an artist and can draw very well. He had sketched a drawing of the Dispatch working area with himself and his coworker. This drawing was placed up on the fridge in the break room. Someone wrote "Faggot" on this picture. This was

not the first time discriminatory was written or spelled out on the fridge. For example, an employee also on the break room fridge that Plaintiff Farrow gave Chief Flowers the "Queer Flu".

37.    In response to Farrow and her team's complaints, Chief Flowers and Assistant Chief VanDeburgh requested Plaintiff Farrow and her Dispatch team to write letters about the incident and the prior issues that have been occurring with Lt. Cox.

38.    On November 21, 2021, an internal investigation was opened on the misuse of 911 and traffic war. Lieutenant Matt Bartel and Lieutenant Chris Cote determined the incident was a mistake from one of the officers leaving his digiticket in a cup holder and it called 911. The officers said that Plaintiff Farrow and her Dispatch team were their dispatch and that the officers come first.

39.    Assistant Chief VanDeburgh then gave Plaintiff Farrow a disciplinary letter for not scheduling a meeting for November, despite knowing it was no longer Plaintiff Farrow's responsibility and that she had not been doing the schedule for him- a duty that used to be Plaintiff Farrow's prior to Assistant Chief VanDeburgh stripping her of her authority.

40.    The following week Assistant Chief VanDeburgh gave Plaintiff Farrow another disciplinary letter for there being a scorpion in a jail cell when she was not on even on duty. Administrative Assistant Melanie Lierle, Communications Officer Nikki Valencia, Lieutenant Laura Cox and Sergeant Nicholas Eck were all made aware of

the scorpion when it was initially found. Sgt. Eck even provided bugs to feed to the scorpion.

41.     On December 23, 2021, Plaintiff Farrow became ill with the amount of stress and anxiety caused by the Assistant Chief and Lt. Cox, by being stripped of her authority in the position due to "issues with her hormones changing," and by Chief Flowers ratification of and refusal to rectify the situation. Plaintiff Farrow developed a major infection on the back of her head, which her doctors say was due to the amount of stress, lack of sleep, and anxiety. Plaintiff Farrow was released back to work on Monday January 3, 2022, per Dr. Blake Badgett.

42.     Shortly thereafter, The Communications Division voted to go to a different schedule. It was agreed Plaintiff Farrow would manage the day shift crew. The week of the change, Assistant Chief VanDeburgh re-arranged everyone, placing Plaintiff Farrow on the night shift and leaving no senior staff or command staff to deal with the day-to-day operations. This resulted in Plaintiff Farrow getting called during the middle of the day, when she needed to sleep, prior to her shifts, on weekends, holidays, and vacations. The stress of no sleep made Plaintiff Farrow ill again.

43.     On March 2, 2022, Plaintiff Farrow decided to resign due to the amount of stress, mental and physical abuse, and discrimination she had been enduring. Plaintiff Farrow took her letter of resignation into Lisa Young, Director of Human Resources for the City of Weatherford, and Chief Flowers, who was sitting in the HR Director;s office. They told Plaintiff Farrow to take the next shift off and reconsider her

resignation. When Farrow did not Assistant Chief VanDeburgh wrote Plaintiff Farrow up on a no call no show.

44. Plaintiff Farrow resigned after this final harassment and retaliation.

45. Plaintiff Farrow was singled out and treated differently than Lieutenant Laura Cox. Lieutenant Cox was involved in an adultery incident in the department, used her personal cell phone to send a snapchat video of a naked intoxicated prisoner in the jail to the majority of the department, falsified training files to gain training hours, and has been caught multiple times during her 8 hour shifts sitting in her office watching the cameras throughout the department and communications department to harass the employees.

46. Plaintiff Farrow witnessed several mornings where Assistant Chief VanDeburgh would sit at the breakroom table with members from the detective, animal control, patrol, and administrative divisions talking about drinking, women, inappropriate behavior on the job, and make derogatory comments about Plaintiff Farrow and Timothy based upon their perceived status as homosexual.

47. Chief Flowers had been informed numerous times by multiple employees about the hostile work environment and discrimination but refused to do anything.

48. For years, WPD/the City/Chief Flowers permitted, endorsed, and encouraged a culture in which straight, male employees to discriminate against female employees and employees in the LGBTQ community based on their gender and sexual orientation.

49.    For example, on one occasion, a male officer told a female, lesbian officer that he would "screw her straight."

50.    Plaintiff Farrow was pressured by Lt. Cox and Sgt. Winguard to fire dispatcher Melody Unwin because she was a lesbian.

51.    Dispatcher Abby Stephenson resigned after working for WPD for only a month due to harassment based on her lesbian status.

52.    Males were held to a different standard of conduct than female employees. For example, if a female employee was late, she was immediately written up. However, a male favorite of Lt. Cox was not written up despite being repeatedly late. In addition, Nick Eck was allowed to go vacation with pay although he had not yet accrued the necessary time. Female employees were not allowed this option.

53.    In early January 2022, dispatcher Melissa Leitz reported to her Lieutenant that an administrative assistant came into dispatch acting hostile and cursing about dispatchers in training.

54.    The Lieutenant relayed the incident to the Assistant Chief, who, instead of investigating the incident, issued Leitz a write-up for "gossiping."

55.    On or around January 28, 2022, Animal Control Supervisor Andrew Vaughan, who was on vacation in Las Vegas, began messaging Plaintiff Leitz via Snapchat.

56.    Vaughan and Leitz exchanged various benign Snapchat photos about their respective weekend activities until Vaughan suddenly turned the conversation

into inappropriate sexual territory.

57.     Vaughan requested photos of Leitz's breasts, but she declined and tried to change the subject.

58.     Once back at work, Vaughan grabbed Leitz's phone and said that he was going to scroll through her photos until he found "nudes" of her.

59.     On February 3, 2022, Plaintiff Leitz stopped by the WPD station at night, after her shift was over, and Vaughan was there.

60.     It was snowing outside and Leitz was wearing red plaid flannel pants. Vaughan commented that "the only thing [Leitz] was missing was a lumberjack on top of [her]."

61.     Vaughan made that lewd comment in front of Leitz's 11-year-old daughter and later remarked that he was glad that his "lumberjack" comment "went over [Leitz's daughter's] head."

62.     Later that night, Vaughan told Leitz that he knew that both he and Leitz were off work the following Friday, and asked her if she would come to his house if he shaved and cleaned his house, implying he wanted to have sex.

63.     After Leitz returned home, Vaughan sent her another crude Snapchat message of a sexual nature. Leitz again turned Vaughan down.

64.     In February 2022, Vaughan came back into Dispatch and asked Plaintiff Farrow if she would "hit that". He said, "Well she invited me over for dinner and things after work."

65. Vaughan told Leitz that he would "f*** the sh*t out of [her]."

66. After Leitz told Vaughan that she would not have sexual relations with him, he took the matter to Assistant Chief VanDeburgh and falsely accused *Leitz* of sexually harassing *him*.

67. On February 9, 2022, Leitz was placed on suspension in retaliation for rebuking Vaughan's sexual advances.

68. On February 25, 2022, Leitz was terminated for purported "policy violations" of which she had never been informed.

69. On another occasion, Chief Flowers asked Leitz who she was dating and said he wanted to "shake that man's hand" because he was obviously "taking care of [Leitz] [sexually]."

70. Mr. Vaughan routinely made inappropriate sexual comments at the office such as that he had a large penis and that he enjoyed cunnilingus.

71. He also told a story, in graphic detail, about how he allegedly had sexual relations with a woman in a wheelchair at a motel.

72. Senior management at WPD, including Chief Flowers, was aware that Vaughan repeatedly made these kinds of comments but Vaughan was never punished.

73. Plaintiff witnessed inappropriate grabbing, verbal threats from peers, stalking by use of city cameras, and offensive discriminatory conduct from co-workers whom faced no discipline. Plaintiff Farrow was belittled and undermined in front of her team, verbally and physically threatened by another administrative staff in front of

her team, had her sexual orientation and self-transition used against her to strip her of authority in front of her colleagues. Chief Flowers did nothing when Plaintiff complained and would say "I am the HR not Lisa Young. You are under the Police Departments chain, and she isn't Human Resources for us. We have our own files down here and decide what goes in the files upstairs."

## FIRST CLAIM FOR RELIEF:
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (As To the Oklahoma Department of Corrections and
### Greg Province in His Official Capacity)

74.     Plaintiff incorporates all preceding paragraphs as if realleged here.

75.     By continually subjecting the Plaintiff to a hostile work environment based on her gender and failing to properly ensure a non-hostile work environment, Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against the Defendants for:

a.   Back pay and lost benefits; front pay until normal retirement

b.   Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c.   Her attorney fees and the costs and expenses of this action;

d.   Such other relief as the Court deems just and equitable.

## SECOND CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF TITLE VII

76.     Plaintiff incorporates all preceding paragraphs as if realleged here.

77.     By changing the terms and assignments of the Plaintiff Farrow's employment and ultimately terminating Plaintiff's employment in retaliation for her participation in protected activity as defined under Title VII, the Defendant has violated 42 U.S.C. §2000e-3(a).

WHEREFORE, Plaintiff prays for judgment against the Defendant for:

    a. Back pay and lost benefits; front pay until normal retirement

    b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

    c. Her attorney fees and the costs and expenses of this action;

    d. Such other relief as the Court deems just and equitable.

### THIRD CLAIM FOR RELIEF
### GENDER AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII

78.     Plaintiff incorporates all preceding paragraphs as if realleged here.

79.     By treating the Plaintiff Farrow differently than her male coworkers, disciplining the Plaintiff more severely than her male coworkers, and terminating her employment, the Defendants have violated Title VII of the Civil Rights Act of 1964.

WHEREFORE, Plaintiff prays for judgment against the Defendants for:

    a. Back pay and lost benefits; front pay until normal retirement

    b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Her attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF 42 U.S.C § 1983 ACTING UNDER COLOR OF LAW

80.    Plaintiff incorporates all preceding paragraphs as if realleged here.

81.    Plaintiff further contends that at all times relevant to this complaint, defendants acted under color and pretense of law, to wit: under color of statutes, custom and usages of the State of Oklahoma to deprive them of the rights, privileges and immunities guaranteed to them in the Constitution of the United States and the laws of the United States and the State of Oklahoma.

82.    Plaintiffs further contend certain agents and officers of the Defendants acted together and individually, and within the scope of their apparent authority in order to deprive them of equal protections of the laws of the United States and the State of Oklahoma. Plaintiffs contend that the City has imposed unlawful termination practices. Defendant Flowers, as the Chief of Police, approved of the hostile work environment and discrimination, by failing to remedy Plaintiffs' complaints.

83.    Plaintiffs contend that in so doing, the State deprived them of the privileges guaranteed by the Fourteenth Amendment of the U.S. Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendants for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for her mental anguish, pain and suffering and

other non-pecuniary losses;

c. Their attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## FIFTH CLAIM FOR RELIEF
## DISCRIMINATION & RETALIATION BASED ON GENDER AND SEX
## IN VIOLATION OF OADA

84. Plaintiff incorporates all preceding paragraphs as if realleged here.

85. Plaintiff Farrow was an at-will employee of Defendants.

86. Plaintiff's discriminatory discharge on the basis of gender is contrary to a clear mandate of Oklahoma public policy, as articulated by Okla. Stat. tit. 25, §§ 1101 & 1302 ("OADA").

87. By treating Plaintiff differently than similarly situated male and non-homosexual employees, Defendants have violated Oklahoma's anti-discrimination statutes, Okla. Stat. tit. 25, §§ 1101 & 1302.

88. Plaintiffs are suited to recover damages for emotional distress and punitive damages based upon the wanton and willful conduct of Defendant, pursuant to the *Burk* public policy tort.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Her attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## SIXTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY

89.     Plaintiff incorporates all preceding paragraphs as if realleged here.

90.     There is an affirmative link between the acts and/or omissions of the City of Weatherford in discriminating against Plaintiffs and the policies, practices and/or customs, which the City promulgated, created, implemented and/or possessed responsibility for.

91.     The Defendant City of Weatherford's actions of intentional indifference and official endorsement of the conduct and actions to which Plaintiffs were subjected created an official policy of endorsement of gender and sexual orientation discrimination.

WHEREFORE, Plaintiff prays for judgment against the Defendant for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Her attorney fees and the costs and expenses of this action;

d. Such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs request a jury trial on all questions of fact raised by this Complaint.

**WHEREFORE**, Plaintiff prays for judgment against the Defendants for:

a. Back pay and lost benefits; front pay until normal retirement

b. Compensatory damages for her mental anguish, pain and suffering and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by the Defendants' management and executives;

d. Her attorney fees and the costs and expenses of this action;

e. Such other relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Daniel E. Smolen
Daniel E. Smolen, OBA# 19943
SMOLEN & ROYTMAN, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119
P: (918) 585-2667
F: (918) 585-2669
danielsmolen@ssrok.com
*Attorneys for Plaintiff*